Filed 2/3/22  Kesterson v. Cal. Public Employees' Retirement System CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARY KESTERSON et al., | B304766 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC502628) |
| v. | |
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, David S. Cunningham, Judge.  Affirmed in part; reversed in part.

Law Offices of John Michael Jensen and John Michael Jensen for Plaintiffs and Appellants.

Reed Smith, Raymond A. Cardozo and Terence N. Hawley for Defendants and Appellants.

Plaintiffs Mary Kesterson, Marcel Poché, Michael Gilmore, the Estate of Robert Seymore (by his personal representative), Gerald Dominguez, Jeffrey Walter, Brad Heinz, and James Steed (collectively plaintiffs) brought this case as a putative class action against California Public Employees' Retirement System and its Board of Administration (CalPERS) in March 2013, alleging that plaintiffs and members of the putative class were owed interest and penalties based on a variety of different types of benefits that CalPERS allegedly withheld or paid late.

In April 2015, CalPERS initiated a formal rulemaking for adoption of a regulation that is now California Code of Regulations, title 2, section 555.5 (section 555.5). Section 555.5 acknowledges that "'participants'" "should receive appropriate interest when any payment owed to a participant from a defined benefit plan has been delayed beyond a reasonable administrative processing time." (§ 555.5, subd. (a).) The regulation permits CalPERS a grace period of "45 calendar days after receipt of all information necessary to make the payment" before interest begins to accrue. (§ 555.5, subd. (c).) If the payment is not made within the appropriate time period, "the payment shall include seven percent per annum simple (non-compounding) interest." (§ 555.5, subd. (d).) The regulation requires exhaustion of administrative remedies and mandates that any participant who claims interest under the regulation "must assert his or her claim for such interest in a writing received by the board within three years after the participant received the payment that the participant claims should have included interest, or else that claim is forever barred." (§ 555.5, subd. (f).) CalPERS sought a stay of the litigation on the ground that the proposed regulation may have some impact on the

2

litigation.  Plaintiffs opposed the stay, arguing that the proposed regulation was unlawful and would not grant the relief that plaintiffs sought, among other things.  The trial court denied the stay.  CalPERS exercised its quasi-legislative discretion to enact section 555.5 in February 2016.  It took effect on April 1, 2016.  (2 C.C.R. 555.5.)

On August 1, 2017, the trial court denied plaintiffs' motion for class certification.  Plaintiffs appealed the denial of class certification, asserting, among other things, that the passage of section 555.5 was "wrongful."  On April 24, 2019, this court affirmed the trial court's decision denying class certification.  (*Kesterson v. California Public Employees' Retirement System* (Apr. 24, 2019, B284977) [nonpub. opn.].)

Following the denial of class certification, CalPERS moved for judgment on the pleadings on the remaining individual claims.  The trial court granted the motion on the ground that the individual plaintiffs failed to exhaust their administrative remedies.

Plaintiffs' counsel then sought attorney fees under a Code of Civil Procedure section 1021.5 (section 1021.5) "catalyst" theory on the grounds that plaintiffs' lawsuit was a catalyst for the passage of section 555.5 and the regulation accomplished many of the goals of the lawsuit.  The trial court bifurcated the proceedings:  first to determine whether plaintiffs were entitled to fees (entitlement phase), and then in a second proceeding the amount of any such fees (determination phase).  In the entitlement phase, the trial court found that plaintiffs were the prevailing parties and were entitled to fees under a catalyst theory because they had obtained the primary relief that they sought.  In the determination phase, the trial court limited

3

plaintiffs' fee award to reasonable hours spent before April 16, 2015, when CalPERS notified plaintiffs of its proposed section 555.5. The court awarded plaintiffs a total of $862,067.70 in fees. The court then awarded plaintiffs reasonable costs of $2,963.20, also limiting costs to the time period preceding the proposal of section 555.5.

CalPERS appeals from the postjudgment order granting plaintiffs an award of attorney fees under section 1021.5 on the ground that plaintiffs did not meet the criteria set forth in the statute for such an award. CalPERS also appeals the award of costs to plaintiffs on the ground that plaintiffs were not the prevailing parties in this litigation under Code of Civil Procedure section 1032.

Plaintiffs cross-appeal, arguing that the trial court wrongly limited both the attorney fee award and the cost award to reasonable hours spent before April 16, 2015. Plaintiffs further argue that the trial court erred in granting CalPERS's motion for judgment on the pleadings.

We find that plaintiffs did not meet the criteria for an award of attorney fees under section 1021.5. We therefore reverse the award of attorney fees. We also find that plaintiffs did not meet the definition of prevailing party in Code of Civil Procedure section 1032 as a matter of law and accordingly reverse the cost award as well.

As to plaintiffs' cross-appeal, the challenge to the amount of fees is moot considering our decision on CalPERS's direct appeal. We further find that the trial court did not err in granting plaintiffs' motion for judgment on the pleadings. That order and the judgment are affirmed.

## FACTUAL BACKGROUND[1]

CalPERS is one of the country's largest public pension funds and serves more than 1.8 million members in its retirement system. CalPERS must verify the information it receives in order to safeguard against fraud and inadvertent overpayment. Thus applicants for benefits must timely provide certain information, and contracting agencies are required to report compensation and other data to CalPERS.

Applicants and agencies vary regarding their compliance, which sometimes results in errors and delays of benefits payments. Other issues may impact the timing of payments. In addition, payments sometimes have to be adjusted due to events such as court rulings, deaths, or additional compensation information received from employers. When a payment is deemed retroactive CalPERS generally will issue a lump-sum payment that aggregates amounts that accrued and matured on different dates. Since disputes occasionally arise between CalPERS and individual members, CalPERS has established an administrative hearing process to address such disputes, which may be followed by writ petitions or other proceedings against CalPERS.

**Mary Kesterson**

Earl Kesterson worked for the Beverly Hills Fire Department. Mr. Kesterson died in September 2011. His widow, Mary Kesterson, informed CalPERS of her husband's death on or about September 22, 2011. On or about October 14, 2011, Mary

---

[1] This factual background, as well as portions of the procedural history, are largely taken from our previous opinion in this case. (*Kesterson v. California Public Employees' Retirement System, supra*, B284977.)

Kesterson completed and returned a CalPERS Application for Retired Member/Payee Survivor Benefits form. CalPERS, however, failed to pay her the one-time death benefits until April 12, 2012. CalPERS originally paid Mary Kesterson an extra penalty payment on April 16, 2012, then later wrote to her claiming it had miscalculated and would be sending her an additional penalty payment. When CalPERS provided her with the additional payment, Mary Kesterson refused to accept the payment on the ground that it was insufficient.

**Hon. Marcel Poché (ret.)**

Marcel Poché was an appellate justice on the First District Court of Appeal. He retired effective September 30, 2000. Two years later, then-Governor Gray Davis appointed Judge Poché to the position of Superior Court Judge on the Santa Clara Superior Court without adding years of service to his JRS pension. However, JRS and CalPERS deducted eight percent from his earnings as a judge for 10 years. Judge Poché resigned on August 13, 2012, and requested a refund of the $133,573.26 in contributions since 2002. On October 30, 2014, JRS returned the $133,573.26 without interest. Judge Poché's representative has acknowledged that CalPERS would owe interest only from the time he demanded a refund after his second retirement and that there is some discretion on the part of CalPERS as to how to handle that unusual situation.

**Michael Gilmore**

Michael Gilmore was a police officer in the Beverly Hills Police Department. In December 2005 he filed for industrial disability retirement (IDR). In October 2009, he was notified that he had been approved for IDR effective December 27, 2008. During the first two years of his retirement CalPERS paid him

6

varying amounts. In April 2012 CalPERS determined his proper pension amount and sent a retroactive lump-sum adjustment of $36,000, with no interest. Gilmore admits that there was certain information that the City of Beverly Hills failed to report to CalPERS delaying his benefit calculation, and it was his employer's responsibility to rectify the situation.

**Estate of Robert Seymore**

Robert Seymore, a former BART police officer, died of self-inflicted injuries. Robert Seymore was named as an individual in the original complaint, although he was already deceased at the time. Plaintiffs' first amended complaint (FAC) indicated generally that Seymore was represented by the personal representative for his three minor children. Plaintiffs' counsel later named this personal representative as Christine Seymore Shell, who serves as guardian to the children. These procedural issues raised questions of timeliness and standing.

Seymore filed for IDR in February or March 2011. His employer determined him to be industrially disabled on March 21, 2011. CalPERS allegedly underpaid him until October 2012 and did not pay interest. Again, CalPERS disputes whether Seymore's employer caused or contributed to the underpayment. Shell believes that Seymore is owed money for service credit based on his prior service in the United States Armed Forces. These claims were disputed by CalPERS and were the subject of a separate pending class action against CalPERS. If such claims are successful Seymore's estate may have a separate claim for unpaid interest.

**Gerald Dominguez**

Gerald Dominguez was a BART police officer until August 2012, when he filed for IDR. Dominguez asserts that although

his disability eligibility was established in August 2012, CalPERS failed to timely pay him the entirety of his benefits and instead wrongly withheld funds. He received a one-time, lump-sum retroactive payment on April 1, 2013, covering the period from the date of his retirement on August 6, 2012, through April 1, 2013. The total payment was $55,200, of which approximately $35,200 was repaid to BART because BART had paid him advanced disability pension payments during the time that he waited for his CalPERS pension to begin. Thus, the amount of interest owed to Dominguez is in dispute.

**Jeffrey Walter**

Jeffery Walter was formerly a city attorney for the City of Cotati, who had made several attempts to become a member of CalPERS. His efforts were contested, and he filed an administrative appeal over his eligibility for CalPERS membership. In July 2008, Walter deposited approximately $469,000 with CalPERS. He claimed that CalPERS "induced" him to deposit the money, then later changed its position. Walter was informed in June 2009 that he was not eligible for membership. Walter did not demand or request that CalPERS return the money because he believed that CalPERS's determination that he was not eligible for membership was incorrect and wanted to continue to appeal that decision. Walter eventually decided to settle and forgo the appeal for personal reasons. CalPERS returned the full amount Walter deposited in December 2011, without interest.

**Brad Heinz**

Brad Heinz worked as an attorney for the State of California for approximately 10 years. He filed for service retirement on May 21, 2012. He initially received a service

retirement but later amended his application seeking a disability retirement on May 30, 2012. On April 25, 2013, CalPERS determined that Heinz was eligible for disability and approved his disability retirement effective May 31, 2012. However, CalPERS failed to pay the full disability allowance for six months. Instead, CalPERS paid only a portion of his pension allowance until November 1, 2013, when it paid a lump sum for the six months the pension was underpaid. CalPERS paid no interest on the delayed disability payments.

Heinz initiated separate administrative proceedings regarding nonpayment, delayed payment or underpayment of medical benefits. His claims in this class action relate to interest on the late payments at issue in those other proceedings.

**James Steed**

James Steed qualified for IDR in 2010. He became involved in litigation with his family over the split of community property funds. Steed claims that CalPERS wrongfully withheld funds while the dispute was pending, and because the funds were withheld, CalPERS owes him interest for the period it held the funds. Although Steed ultimately lost the case and it was determined that he was not entitled to the funds, Steed claimed that CalPERS still owed him interest on approximately $819 he received on remand. CalPERS took the position that the money it owed Steed was offset by money Steed owed to CalPERS. Steed took the position that he no longer owed CalPERS any money because he declared bankruptcy. CalPERS disputed that claim.

## PROCEDURAL HISTORY

**The complaint**

On March 8, 2013, plaintiffs, individually and on behalf of a class of others similarly situated, filed this action for violation of statutory duties; interest; damages; breach of contract; equitable relief; injunctive relief; accounting; constitutional impairment of contract; and attorneys' fees.[2]  The FAC was filed on September 16, 2013.[3]

### *General allegations*

The FAC alleged that plaintiffs "are enrollees, beneficiaries, and other individuals . . . who seek the payment of **interest** on funds, monies, benefits, or contributions . . . that are or were on deposit with, administered by, held by, delayed, or wrongfully withheld" by CalPERS.  Such interest was allegedly due pursuant to "*Civil Code*, Constitution, case law, and statute," including Civil Code sections 1955, 3281, 3287 and 3289, and the California Constitution, "including Art. XV, § 1-17 [*sic*] and Art. XVI, § 17(A)," various provisions of the Government Code and interest provisions in the California Code of Regulations.

### *Class allegations*

The proposed class was defined as follows:

---

[2]     Initially the class representatives were Mary Kesterson, Michael Gilmore, Robert Seymore, and Jeffrey Walter.

[3]     The FAC named as class representatives Mary Kesterson, Marcel Poché, Michael Gilmore, the Estate of Robert Seymore, Gerald Dominguez, Jeffrey Walter, Brad Heinz, Christopher Cervelli, and James Steed.  The court sustained without leave to amend CalPERS's general demurrer to the claim for interest by Christopher Cervelli, who is not a party to this appeal.

"All individuals who had or have funds, credits, monies, benefits, contributions, or assets (hereafter 'funds') that are or were on deposit with, held by, entrusted to, or under the control of CalPERS, including during which time CalPERS failed to timely pay the funds (or refund the contributions) and failed to accrue, credit or pay interest on said funds.

"The above defined class includes but is not limited to CalPERS enrollees who have or had funds on deposit with, held by, entrusted to, or under the control of CalPERS, including during which time CalPERS failed to timely pay the funds and failed to accrue, credit or pay interest on said funds, including for the period where payment of funds is wrongfully delayed, unpaid or held, (including those CalPERS enrollees who received lump sum or accumulated funds, benefits or payments from CalPERS) and upon the return, refund, or payment of said funds, CalPERS has refused and/or failed to pay, increase, accrue interest on those funds to the recipient.

"The above defined class includes but is not limited to beneficiaries of CalPERS enrollees who have or had funds on deposit with, held by, entrusted to, or under the control of CalPERS, including during which time CalPERS failed to timely pay the funds and failed to accrue, credit or pay interest on said funds, including for the period where payment of funds is wrongfully delayed, unpaid or held, (including those beneficiaries of CalPERS enrollees who received lump sum or accumulated funds, benefits or payments from CalPERS) and upon the return, refund, or payment of said funds, CalPERS has refused and/or failed to pay, increase, accrue interest on those funds to the recipient.

11

"The above defined class includes but is not limited to, individuals who are not enrolled in CalPERS who have or had funds on deposit with, held by, entrusted to, or under the control of CalPERS, including during which time CalPERS failed to timely pay the funds and failed to accrue, credit or pay interest on said funds, including for the period where payment of funds is wrongfully delayed, unpaid or held, (including those who received lump sum or accumulated funds, benefits, return of contributions, or other payments from CalPERS) and upon the return, refund, or payment of said funds, CalPERS has refused and/or failed to pay, increase, accrue interest on those funds to the recipient.

"The above defined class includes but is not limited to individuals who have earned a vested right to funds, benefits, allowances, credits, or payments from CalPERS, where interest is owed, but CalPERS failed to timely pay the funds and does not add or pay an increase or addition for interest.

"The above defined class includes but is not limited to participants to whom CalPERS failed to timely pay funds, or delayed payments in excess of 45 days, making CalPERS liable for 'penalties,' including pursuant to Government Code section 21499."

***Allegations regarding exhaustion requirement***

Plaintiffs alleged that they were not required to exhaust their administrative remedies because the administrative remedy was "inadequate and unavailable." Among other things plaintiffs alleged that "CalPERS has adopted the APA [(Administrative Procedures Act)] which fails to provide the due process protections required in a class action where absent parties are

12

represented.  CalPERS and the APA have no authority, process, or procedures for dealing with class actions."

### *Prayer for relief*

In their prayer for relief, plaintiffs sought:

1.  A finding that CalPERS has (i) violated plaintiffs' statutory and constitutional rights, (ii) violated statutory duties to plaintiffs, (iii) failed to correctly interpret the statutes for plaintiffs' benefit, (iv) failed to comport with the California constitution and Civil Code, (v) failed to timely pay benefits and correctly credit and pay interest;

2.  An award of interest to plaintiffs pursuant to the highest applicable interest provision;

3.  An award or correct awards of statutory and other penalties;

4.  Alternatively, an award of damages, consequential damages, or other relief in the amount to make plaintiffs whole;

5.  Alternatively, a lump sum sufficient to make plaintiffs whole;

6.  Alternatively, an order of contract damages, consequential damages, or any other relief in an amount to make plaintiffs whole;

7.  Prospective relief, including requiring CalPERS to provide members, beneficiaries and other persons similarly situated with interest in the future;

8.  An accounting of all monies that plaintiffs and class members and their employers have paid into or contributed to CalPERS;

9. A constructive trust of all monies associated with unpaid interest that plaintiffs and the class members have paid into;

10. An award of attorney fees under contract, as a percent of the recovery, the substantial benefit, common fund, private attorney general or other theory;

11. An award of attorney fees from plaintiffs as the class members prorated, as provided under contract, as a percent of the recovery, the substantial benefit, common fund, private attorney general or other theory;

12. An award of costs and other relief as appropriate; and

13. An award of any and all extraordinary, additional and further relief the court may deem proper.

**Public records act request**

In 2013, pursuant to the Public Records Act (Gov. Code, § 6250 et seq.) plaintiffs requested that CalPERS provide data on payments made by CalPERS since 2000, including information on service retirements, returns of contributions, deaths, and "other benefits." As CalPERS does not normally keep data in the form requested, it spent hundreds of staff hours attempting to comply with these requests. Ultimately it produced voluminous spreadsheets. The included information varied between the types of benefits.

The data fields in the electronic business records included: (1) the retirement date, (2) the payee name, (3) the amount of payment, (4) the payment date, (5) the benefit type, (6) the payee type, (7) the payment type, and (8) other details.

For death benefits, data fields included: (1) the payee name, (2) the deceased name, (3) death date, (4) date that death was reported, (5) "Last Doc Received" date, (6) the date payment was released, (7) the warrant issue date, (8) payment type, (9) amount of payment, (10) the penalty interest under Government Code section 21499, and (11) other details.

Payments are listed as "ongoing," "one-time," "retroactive," "additional," or "lump-sum."

CalPERS explained that it provided as much responsive information as it could to plaintiffs' Public Records Act request. However the request sought millions of documents that would have included a substantial amount of confidential information about CalPERS's members. Counsel met and conferred regarding the essential information, and ultimately prepared two charts: one regarding death payments and one regarding nondeath payments. Certain of the named class representatives do not appear in the charts for various reasons, including the date of those individuals' payments.

The Public Records Act request did not seek information regarding when payments accrued or "matured."[4] Further CalPERS would not have been able to provide such information without reviewing individual files, which would have been unduly burdensome. Plaintiffs' counsel subsequently requested additional information regarding accrual of benefits. CalPERS's counsel explained that it was unable to provide such additional information without tremendous burden and expense. CalPERS did not believe it was required to engage in such a task under the Public Records Act.

---

[4] The accrual date is the date that CalPERS received all of the information necessary to calculate each retirement benefit. The "retirement date" in the charts is simply the effective retirement date within the meaning of Government Code section 21252. That date does not necessarily coincide with the date that the member submitted a retirement application or when CalPERS received all information necessary to calculate the retirement benefit.

15

**CalPERS's demurrer**

In October 2013, CalPERS filed a demurrer to plaintiffs' FAC on the ground that plaintiffs failed to exhaust their administrative remedies. The trial court overruled the demurrer on the ground that plaintiffs had filed a class action, and the administrative remedies available did not provide for class relief. The trial court concluded, "The board of administration lacks jurisdiction to hear class claims. If Plaintiffs have alleged a class action, then they need not allege exhaustion of administrative remedies." The trial court determined that for pleading purposes plaintiffs' class allegations were sufficient.

**CalPERS's proposal of section 555.5 and request for stay of litigation**

In April 2015, the CalPERS board initiated a formal rulemaking proposal for adoption of section 555.5. The regulation established procedures governing interest payments on certain benefits. (§ 555.5.) In June 2015, CalPERS requested a stay of this litigation on the ground that the proposed regulation could affect the case. In support of its motion to stay the litigation CalPERS stated, "If the Board adopts the proposed regulation in its current form, there is no doubt that the regulation will have a significant impact on both the conduct of this action and the remedies the Court might fashion, if any."

Plaintiffs opposed the stay. Among other things, plaintiffs argued that proposed section 555.5 "is inconsistent with the *Civil Code* as it wrongly attempts to grant CalPERS additional 'reasonable administrative processing time' after the benefits have matured and become payable." Plaintiffs also argued in a heading captioned "Regulation 555.5 Will Not Grant the Relief Sought by the Putative Class" that they would be severely

prejudiced by a stay because "[a]pproximately 25% of the proposed class claims accrued and vested at a time beyond the potential 3-year reach of the proposed regulation." Further, certain categories of class members fell outside of the coverage of section 555.5. Plaintiffs claimed that the proposed regulation was an attempt to "settle around" the court's authority, deny the class claims, retain property unlawfully, and severely prejudice the putative class.

The trial court denied the stay.

**Class certification proceedings**

Plaintiffs filed their motion for class certification on June 15, 2015, including a memorandum of points and authorities and supporting declarations. CalPERS filed its opposition to plaintiffs' motion for class certification on January 11, 2017. On March 29, 2017, plaintiffs filed their reply to CalPERS's opposition.

On August 1, 2017, a hearing on the motion for class certification and related motions was held. The same day the court issued its "Amended and final ruling" denying plaintiffs' motion for class certification and for an evidentiary hearing. The court ruled that the size of the class was uncertain. While plaintiffs claimed it was "in excess of 100,000," CalPERS claimed it was approximately two million. The court also found that plaintiffs' trial plan was inadequate.

On September 11, 2017, plaintiffs filed their notice of appeal from the order denying class certification. In the appeal on the class certification issue plaintiffs asked this court to ignore section 555.5 on the grounds that the formulation and passage of section 555.5 was wrongful. Because plaintiffs failed to articulate any clear argument as to how it was illegal or

17

improper, or cite any legal authority as support for their position, we declined to address the issue.

On April 24, 2019, this court affirmed the denial of class certification.

**CalPERS' motion for judgment on the pleadings**

On August 30, 2019, CalPERS filed a motion for judgment on the pleadings asserting that the trial court had no jurisdiction to hear the named plaintiffs' claims because they failed to exhaust their administrative remedies. CalPERS pointed out that its demurrer had been overruled on the grounds that CalPERS lacked jurisdiction to hear class actions. CalPERS further pointed out that it has an administrative hearing process through which a member may seek funds. This administrative process was always available to plaintiffs. After the denial of class certification was affirmed on appeal, plaintiffs could no longer rely on their class allegations to avoid their obligations to exhaust their administrative remedies. CalPERS argued that plaintiffs had acknowledged CalPERS's constitutional and statutory authority over the plaintiffs' claims and that CalPERS had, in prior cases, awarded Civil Code interest.

Plaintiffs opposed CalPERS's motion on the grounds that (1) CalPERS lacked authority to resolve plaintiffs' claims; (2) plaintiffs' claims were outside CalPERS's jurisdiction; and (3) it would be futile to participate in the administrative process due to the three-year statute of limitations found in section 555.5. The trial court was not persuaded by any of plaintiffs' arguments. The court noted that CalPERS "clearly ha[s] administrative authority and jurisdiction to resolve Plaintiffs' claims." The court rejected plaintiffs' claims that exhaustion was futile, stating, "[t]he existence of the statute of limitations does not necessarily

18

render Plaintiffs' administrative claims futile.  As Plaintiffs contend, given the history of this case there may be meritorious arguments for tolling the statute of limitations."  CalPERS argued that the motion should be granted without leave to amend, and at oral argument plaintiffs' counsel conceded that dismissal without leave to amend was proper, as "failure to exhaust is a jurisdictional bar."  The trial court granted CalPERS's motion for judgment on the pleadings without leave to amend.[5]

**Plaintiffs' motion for attorney fees—entitlement phase**

On September 4, 2019, plaintiffs filed their "Motion for Costs and Attorney Fees Under Code of Civil Procedure Section 1021.5—Entitlement Phase."  Plaintiffs argued that "[b]y their suit and years of meritorious litigation, Plaintiffs forced CalPERS to clarify and account for when payments were wrongfully withheld, when payments were late and when interest was required; forced CalPERS to revamp its computer system to make sure it was paying on time; and then made CalPERS pay interest when it was late.  Plaintiffs also persuaded the CalPERS Board to make significant improvements in the regulation as proposed, further benefiting the putative class."  Plaintiffs argued that to be successful, they need not personally benefit from their success.  Plaintiffs acknowledged that section 555.5 "did not provide the full relief that Plaintiffs sought," but claimed they were the prevailing parties because they "vindicated the principle upon

---

[5]     Although the court's tentative ruling indicated that the court would grant plaintiffs leave to amend, the court was persuaded by the parties at oral argument that dismissal without leave to amend was proper.  The court indicated it would "modify [the] tentative" accordingly.

19

which they brought the suit and achieve[d] many of their litigation objectives."

On September 13, 2019, CalPERS filed its opposition to plaintiffs' motion. CalPERS argued that plaintiffs were not the prevailing parties, as they did not achieve the primary relief they sought. CalPERS further argued that plaintiffs' claims lacked merit, their settlement efforts were insufficient, and to allow attorney fees would encourage wasteful litigation, among other things. On September 19, 2019, plaintiffs filed a reply.

Following the September 26, 2019 hearing, the trial court adopted its tentative ruling in favor of plaintiffs on the motion for attorney fees. The court reasoned that plaintiffs were the successful party because "their litigation was the catalyst for [CalPERS's] change in behavior." The trial court explained that the chronology of events raised an inference that plaintiffs' litigation was the catalyst for CalPERS's "change in behavior." The trial court acknowledged that due to the motion for judgment on the pleadings, the merits of plaintiffs' claims were never determined. However, the court pointed to statements in CalPERS's motion to stay as acknowledgement that plaintiffs' claims had merit. The court also found that plaintiffs had proven the other elements necessary for a catalyst fee claim. As to the third element, whether the necessity and financial burden of private enforcement transcended the litigant's personal interest in the litigation, the trial court stated, "[b]ecause there was no monetary recovery, the Court need not address this third and final prong under Section 1021.5."

**Plaintiffs' motion for attorney fees—determination phase**

On November 12, 2019, plaintiffs filed their "Notice and Motion for Costs and Attorney Fees Under Code of Civil

20

Procedure Section 1021.5—Determination Phase." Plaintiffs attached detailed billing records and sought $625 per hour for attorney time and $200 per hour of paralegal time for the period January 8, 2012, through September 26, 2019. The lodestar calculation for the combined time was $3,065,365. Plaintiffs sought an enhancement of 2.0 of the lodestar for a total award of $6,130,730.

CalPERS opposed the fee demand and offered the analysis of a fee expert who opined that the billing records were inadequate, inflated, improper and otherwise excessive.

Prior to the January 6, 2020 hearing, the trial court issued a tentative ruling, noting that "[a]lthough the Court previously held that Plaintiffs' efforts were the 'catalyst' for the enactment of Regulation 555.5, the Court finds that Plaintiffs' unsuccessful litigation after April 16, 2015 demonstrates that such hours were not reasonably expended." Because section 555.5 was proposed on April 16, 2015, "litigation after April 16, 2015 . . . appears to have been almost entirely unsuccessful for Plaintiffs." The trial court pointed out the contradiction in plaintiffs' theory that they were entitled to attorney fees for the entirety of the litigation:

> "However, Plaintiffs cannot have it both ways. If they claim 'success' as a 'catalyst' for Regulation 555.5, they cannot claim that their unsuccessful post-April 16, 2015 litigation is reasonably related to any such 'success.' Given that the only cognizable success in this action was the enactment of Regulation 555.5, Plaintiffs[] are entitled only to reasonable hours spent before April 16, 2015. Seeking fees for post-April 16, 2015 litigation undermines Plaintiffs' entitlement to fees under the catalyst theory. In other words, either (i) Plaintiffs are entitled to fees as the catalyst for Regulation 555.5, or (ii) Plaintiffs are

21

not entitled to any fees at all if they believe that continued litigation was necessary because Regulation 555.5 did not provide them their primary litigation objective."

Accordingly, the trial court deducted "2,676.78" hours of attorney time and "1,408.70" hours of paralegal time. The court also deducted time for excessive, block and vague billing, as well as other billing irregularities, and reduced the attorney hourly rate to $475 per hour. The court arrived at a lodestar figure of $574,711.80 and applied a 1.5 multiplier for a total award of $862,067.70.

At the hearing the court questioned plaintiffs' counsel, noting that the $6 million figure "kind of jumped out given what was actually recovered. It—you hate to see cases that begin to look like they're driven exclusively and primarily because of the attorneys' fees." Plaintiffs' attorney pointed out that there were seven years of litigation involved. He further noted that the regulation was not formally adopted until February 2016. Plaintiffs' counsel asked the court to reconsider the period from July 2019 through September 2019 as part of a "fees-on-fees" request. CalPERS's attorney argued that plaintiffs should get no fees at all, as plaintiffs' counsel "did everything he could to torpedo the regulation." CalPERS pointed out that plaintiffs' attorney "submitted voluminous objections . . . to 555.5 and pretty much every aspect of it." CalPERS argued that instead of pressuring CalPERS to enact section 555.5, the record showed that plainitffs' attorney "wanted CalPERS and the board to tank 555.5 so he could proceed with the class action lawsuits." Ultimately, the court adopted its tentative decision without change.

**Motion to tax/strike costs**

On November 12, 2019, CalPERS filed its motion to strike or tax costs. On November 25, 2019, plaintiffs filed their opposition. The reply was filed on December 5, 2019. The matter was heard on January 6, 2020. CalPERS argued that plaintiffs were not entitled to costs because they were not the prevailing party. The trial court disagreed, finding that plaintiffs achieved nonmonetary relief through the passage of section 555.5. However, the court agreed that plaintiffs were not entitled to any costs after April 16, 2015. Thus, CalPERS' motion to tax/strike costs was granted in part and denied in part. The court awarded plaintiffs costs in the amount of $2,963.20.

**Notices of appeal**

On March 3, 2020, CalPERS filed its notice of appeal from the judgment and all orders, including the rulings on fees and costs. On March 10, 2020, plaintiffs cross-appealed.

## DISCUSSION

CalPERS challenges the award of attorney fees to plaintiffs under the catalyst theory. CalPERS argues that the trial court applied the wrong criteria in granting the award and erroneously awarded fees although plaintiffs did not obtain the primary relief they sought in the litigation. CalPERS argues that reversal of the fee award also warrants reversal of the costs award. Finally CalPERS argues that if this court upholds any portion of the award, the fee multiplier should be reversed.

In their cross-appeal, plaintiffs argue that the trial court erred in finding that the hours billed after April 16, 2015, were not reasonably expended and in reducing the lodestar amount. Plaintiffs also challenge the elimination of costs after April 16,

2015. Finally plaintiffs challenge the trial court's decision granting CalPERS's motion for judgment on the pleadings.

We address each appeal separately.

## I. CalPERS's appeal

### A. *Section 1021.5*

Section 1021.5 states, in part:

"Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The statute ""rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible."" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*).) "'[T]he fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.'" (*Ibid.*)

In order to obtain attorney fees pursuant to section 1021.5, "a party seeking an award . . . must first be determined to be 'a successful party.'" (*Coalition for a Sustainable Future in Yucaipa*

*v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 521 (*Yucaipa*).) Thus, a "necessary prerequisite to recovery under the statute is the status of the prevailing party." (*Ibid.*)

In order to effectuate the purposes of the statute, courts have taken "a broad, pragmatic view of what constitutes a 'successful party.'" (*Graham, supra*, 34 Cal.4th at p. 565.) "It is not necessary for a plaintiff to achieve a favorable final judgment to qualify for attorney fees so long as the plaintiff's actions were the catalyst for the defendant's actions, but there must be some relief to which the plaintiff's actions are causally connected." (*Yucaipa, supra,* 238 Cal.App.4th at p. 521.) "'In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution."'" (*Graham, supra*, at p. 566.) Attorney fees may be proper "'whenever an action results in relief for the plaintiff, whether the relief is obtained through a "voluntary" change in the defendant's conduct, through a settlement, or otherwise." (*Id.* at pp. 566-567.)

Thus the term "successful party," as used in section 1021.5, means "the party to litigation that achieves its objectives." (*Graham, supra*, 34 Cal.4th at p. 571.) In other words, "'if a party reaches the "sought-after destination," then the party "prevails" regardless of the "route taken."'" (*Ibid.*) An award of attorney fees thus may be appropriate "if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (*Yucaipa, supra*, 238 Cal.App.4th at p. 521.) "At the very least, a plaintiff must establish "'the precise factual/legal condition that [it] sought to change or affect'" as a prerequisite for establishing the catalytic effect of its lawsuit." (*Graham, supra*, at p. 576.) The catalyst theory is intended to save judicial

25

resources, "'by encouraging "plaintiffs to discontinue litigation after receiving through the defendant's acquiescence the remedy initially sought.""" (*Id.* at p. 573.)

Once deemed a "successful party," the party must establish several other criteria. A party is entitled to attorney fees under section 1021.5 if the party establishes that "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense; and (3) the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (*Yucaipa, supra*, 238 Cal.App.4th at p. 521.)

If a plaintiff establishes the foundational elements described above, a court must then analyze the remaining statutory criteria. The court must consider whether: "(1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' " (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934-935.) Only where the action has produced a monetary recovery, a court should consider whether "'such fees should not in the interest of justice be paid out of the recovery.'" (*Id.* at pp. 934-935.)

### B.  *Standard of review*

Generally, we review the trial court's determination of whether a party has met the statutory requirements for an award of attorney fees for abuse of discretion. (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th

26

150, 190-191 (*Yolo*).)  However "[t]he trial court does not have discretion to award attorneys' fees unless the statutory criteria have been met as a matter of law."  (*Id.* at p. 192.)

## C.  *Plaintiffs were not successful parties in the litigation*

"The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives." (*Graham, supra,* 34 Cal.4th at p. 571.)  In order to be considered successful parties under section 1021.5, parties to the litigation must establish that they achieved "the *primary* relief sought." (*Marine Forests Society v. California Coastal Comm.* (2008) 160 Cal.App.4th 867, 878 (*Marine*).)  The trial court determined that plaintiffs were successful parties because their primary goal was "to make [CalPERS] pay interest on unreasonably delayed benefit payments."  The court reasoned that after section 555.5 was passed, CalPERS paid such interest.  The court did not specify to whom such interest was paid.  As set forth below, we conclude that none of the parties to this litigation achieved the primary objective of this lawsuit—financial compensation.

### 1.  *Parties to the litigation*

In answering the question of whether the plaintiffs were successful parties, we must first identify the parties to this litigation.  (*Graham, supra,* 34 Cal.4th at p. 571 ["The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives."].)

The named plaintiffs, none of whom received compensation as a result of this litigation, are unquestionably parties to the litigation.

Unnamed members of the proposed class cannot be considered parties to this litigation particularly where, as here,

27

class certification was denied.[6] (*Williams v. U.S. Bancorp Investments, Inc.* (2020) 50 Cal.App.5th 111, 121 ["[T]he 'definition of the term "party" can on no account be stretched so far as to cover a person . . . , whom the plaintiff in a lawsuit was denied leave to represent.'"], quoting *Smith v. Bayer Corp.* (2011) 564 U.S. 299, 313; *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 603 [reversing § 1021.5 attorney fee award to party that successfully brought motion to unseal records on the grounds that "allowing a member of the public to file a motion to unseal records . . . does not transform that member of the public into a party to the lawsuit"].) Relief provided to unspecified third parties, who are not parties to the litigation, does not render the plaintiffs "successful parties" under section 1021.5. (*Marine, supra*, 160 Cal.App.4th at p. 873 [§ 1021.5 is ""'not a reward for litigants motivated by their own interests who coincidentally serve the public'"'"].)

Further, it is unclear how many members of the putative class have been paid interest pursuant to section 555.5. In his declaration in support of his motion for attorney fees and costs, plaintiffs' counsel declared that "[f]rom the regulation's enactment in February 2016 to early in 2019, CalPERS paid over $575,000 in interest to over 16,700 members" under section 555.5. However, plaintiffs' counsel does not indicate how many of those members of CalPERS were part of the putative class. The class was largely defined as a group of people who had already been injured as of September 16, 2013, by CalPERS's failure to

---

[6]    We sought, and received, supplemental briefing from the parties on the question of whether members of the putative class should be considered "parties" to this litigation for the purposes of the "successful party" analysis.

28

pay interest. Plaintiffs' counsel admitted, in opposing CalPERS's motion to stay, that "[a]pproximately 25% of the proposed class claims accrued and vested at a time beyond the potential 3-year reach of the proposed regulation." Therefore, even if the putative class members could be considered parties to the litigation, there is insufficient information to determine how many, if any, have been successful in actually receiving interest payments pursuant to section 555.5.

While we must limit our consideration of the "successful party" analysis to the named plaintiffs, as discussed below, even if we were to consider the putative class members as parties to the litigation, they could not be considered successful in achieving their objectives.

**2.** *Primary goal of the litigation*

The generic goal of "mak[ing] [CalPERS] pay interest on unreasonably delayed benefit payments" was not the "primary goal" of this lawsuit. Plaintiffs admit that CalPERS had previously been paying such interest in certain cases, although perhaps not in a uniform way.[7] Instead, plaintiffs sought to compel CalPERS to pay certain individuals to whom such interest payments were owed.

In determining the primary goal of litigation we look to the allegations in the complaint. (*Marine, supra*, 160 Cal.App.4th at p. 878.) In the FAC plaintiffs alleged that they were "enrollees, beneficiaries, and other individuals" who were seeking "the payment of **interest** on funds, monies, benefits, or

---

[7] In granting CalPERS's motion for judgment on the pleadings, the trial court noted that "Plaintiffs . . . allege that [CalPERS] ha[s] awarded other claimants interest in their administrative appeals."

29

contributions . . . that are or were on deposit with, administered by, held by, delayed, or wrongfully withheld" by CalPERS. In other words, the lawsuit was comprised of specific individuals with funds in the CalPERS system who sought payment of interest on those specific funds. Plaintiffs were not seeking a generic regulation setting the parameters regarding the payment of interest. Instead, they sought interest they believed was owed to them.

The prayer for relief illustrates this primary goal. Of the nine main goals plaintiffs sought (excluding prayers for attorney fees and costs), the first six requested adverse findings and monetary relief, which the lawsuit did not achieve:

First the lawsuit sought a finding that CalPERS had violated statutory and Constitutional duties owed to them. Plaintiffs did not achieve this goal, as none of the individual plaintiffs' rights were adjudicated, and the class was not certified. There was no finding that CalPERS had committed a violation of any law.

Second the plaintiffs sought an award of interest pursuant to the highest interest provision applicable. The named plaintiffs did not receive any monetary award, and it is unclear how many, if any, of the putative class members did so.

Third plaintiffs sought an award of "statutory or other penalties." They did not receive such an award, nor is there any evidence that any putative class member did so.

Fourth plaintiffs sought an award of "damages, consequential damages, or other relief" in the amount to make them whole. They did not receive such an award, nor is there any evidence that any putative class member did so.

Fifth plaintiffs sought a "lump sum sufficient to make Plaintiffs whole for any prior period of unpaid interest." They did not receive such an award, nor is there any evidence that any putative class member did so.

Sixth plaintiffs sought an alternative award of "contract damages, consequential damages, or other relief in the amount to make Plaintiffs whole." They did not receive such an award, nor is there any evidence that any putative class member did so.

Plaintiffs also sought an accounting and a constructive trust, neither of which they succeeded in obtaining.

None of the named parties to this litigation was paid interest as a result of section 555.5. Plaintiffs have admitted that due to the three-year statute of limitations contained in section 555.5, the named plaintiffs are ineligible to receive interest under the regulation. Nor did they receive any damages, penalties or other compensation. In short, the named plaintiffs did not achieve their primary objective, which was the payment to them of money.

The single request that plaintiffs arguably achieved was their request that the court "[p]rovide prospective relief, including requiring CalPERS to provide Members, beneficiaries and other persons similarly situated with interest in the future." Section 555.5 provides a uniform standard for the payment of interest in the future. However it cannot be said that such prospective relief was the primary goal of the litigation. As shown by the numerous requests for monetary compensation in the form of interest, damages, and other relief, the primary goal of the litigation was payment of money to the parties. Any arguable prospective relief obtained under plaintiffs' prayer

31

request did not benefit any party to this litigation. (*Graham, supra*, 34 Cal.4th at p. 571.)

In sum, none of the named plaintiffs qualifies for relief under section 555.5, as it contains a three-year statute of limitations. Nor is it clear how many class members achieved relief under section 555.5. The parties cannot be said to have achieved their primary goal—payment of interest or other compensation *to them*.

**3.** *Section 555.5 did not grant the relief sought by plaintiffs or the proposed class*

No party to this litigation achieved the lawsuit's primary goal of financial recovery. However even if we were to consider the unnamed putative class members as parties to this litigation and consider the request for prospective relief as the lawsuit's primary goal, section 555.5 did not achieve that goal.

Section 555.5 did not create a new legal obligation that CalPERS pay interest on unreasonably delayed payments. As set forth above, it appears that historically CalPERS had been paying interest in certain cases. In the FAC plaintiffs listed four Civil Code sections, two constitutional provisions, nine Government Code sections, three regulations, and made reference to case law, as well as other statutes, regulations, and common law, under which CalPERS was "expressly and implicitly required to add, accrue, credit or award . . . **interest**." Section 555.5 did not create a new legal requirement that CalPERS pay interest, but set forth the conditions under which CalPERS will pay such interest—including requiring that CalPERS receive "all information necessary to make the payment" and allowing

32

CalPERS a 45-day grace period. (§ 555.5, subd. (c).)[8] As the trial court recognized in denying class certification, "[d]etermining when a benefit plan (like CalPERS) must pay prejudgment interest to a benefit claimant can be intricate." Section 555.5 acknowledged CalPERS's obligation to pay interest and set the guidelines under which it will pay such interest going forward.

Plaintiffs' opposition to section 555.5 and refusal to end the litigation when section 555.5 was proposed show that the passage of section 555.5 did not provide plaintiffs "the remedy [they] initially sought." (*Marine, supra*, 160 Cal.App.4th at p. 877.) As CalPERS points out, plaintiffs opposed the regulation, arguing that the regulation was outside of the "lawmaking authority delegated to CalPERS by the Legislature." They further argued that the regulation "is inconsistent with CalPERS' constitutional and statutory duties to promptly administer the system and pay benefits." Plaintiffs specifically argued that the proposed regulation would "[n]ot [g]rant the [r]elief [s]ought by the [p]utative [c]lass," and indeed would "[s]everely [p]rejudice" the existing plaintiffs because "approximately 25% of the proposed class claims accrued and vested at a time beyond the potential 3-year reach of the proposed regulation." (Boldface and underscoring omitted.)

---

[8] These requirements contradict Plaintiffs' contention that "CalPERS cannot have a legitimate reason to delay payment more than 45 days from the date on which [they] contend[] it matured." Plaintiffs later conceded in the class certification proceedings that "the possibility exists that some members may have caused a delay of more than 45 days." This problem was one of the trial court's cited reasons for denial of class certification.

A primary purpose of the catalyst rule is to save judicial resources by "'encouraging "plaintiffs to discontinue litigation after receiving through the defendant's acquiescence the remedy initially sought."'" (*Graham, supra,* 34 Cal.4th at p. 573.) Instead of saving judicial resources by ending the litigation at the time section 555.5 was proposed or passed into law, plaintiffs continued to litigate. They opposed CalPERS's motion to stay the litigation, claiming that the proposed regulation did not grant the relief they were seeking. They continued to litigate over four more years, through class certification and CalPERS's motion for judgment on the pleadings, which was granted in September 2019. As the trial court correctly pointed out, "[p]laintiffs cannot have it both ways." "In other words, either (i) Plaintiffs are entitled to fees as the catalyst for Regulation 555.5, or (ii) Plaintiffs are not entitled to any fees at all if they believe that continued litigation was necessary because Regulation 555.5 did not provide them their primary litigation objective." Plaintiffs' insistence that section 555.5 did not provide them the relief they sought, and their refusal to stay the matter, weigh against them in the "successful party" analysis under section 1021.5.[9]

---

[9] As explained in *Skaff v. Rio Nido Roadhouse* (2020) 55 Cal.App.5th 522, 540, it is not clear that the catalyst theory should ever apply when a matter is litigated to final judgment. Unlike "the mooted claim at issue in *Graham,*" the merits of the *Skaff* matter were "thoroughly litigated to a final judgment." (*Ibid.*) Because no judicial efficiency was achieved, the *Skaff* court noted that the catalyst theory may not have been properly invoked. (*Ibid*.) The *Skaff* court reversed the award of catalyst fees on the ground that the plaintiff had not established his

Considering all of the circumstances, the plaintiffs did not achieve the primary relief sought. What they sought was payment, whether it be interest, damages, penalties, or some other form of compensation. Plaintiffs did not achieve ""'the precise factual/legal condition that [they] sought to change or affect.'"" (*Graham, supra*, 34 Cal.4th at p. 576.) Thus, they cannot be considered "successful part[ies]" under section 1021.5. The statute is inapplicable, and the trial court had no discretion to award attorney fees under the statute.[10] (*Yolo, supra*, 4 Cal.App.5th 150, 192.)

**D.** *Merit analysis under section 1021.5*

We briefly address *Graham*'s requirement that in order to prevail under section 1021.5, the plaintiffs must establish that their achievement came about "'by threat of victory, not by dint of nuisance and threat of expense.'" (*Graham, supra*, 34 Cal.4th at

---

entitlement to relief and therefore could not be deemed the prevailing party. (*Ibid.*)

[10] We reject both plaintiffs' argument and the trial court's position, that CalPERS's "revamp[ing] [of] its computer system to make sure it was paying on time" was a primary goal of this litigation. Plaintiffs did not seek a revamping of CalPERS's computer systems as an objective of their litigation. Thus such action cannot be viewed as the primary relief sought by plaintiffs' complaint. (See *Marine, supra*, 160 Cal.App.4th 867, 880 ["[T]he Legislature's amendment of section 30312 cannot be viewed as the primary relief sought by Marine Forests's complaint, which was aimed at preventing the removal of its artificial reef."].) We do not look to every incidental benefit that may have arisen out of a lawsuit, but look to determine whether the plaintiff has achieved ""'the precise factual/legal condition that [it] sought to change or affect.'"" (*Graham, supra*, 34 Cal.4th at p. 576.)

p. 575.)  The trial court acknowledged that due to the denial of class certification, the merits of plaintiffs' claims were never addressed by any court.  However the trial court stated its position that statements in CalPERS's motion to stay were an acknowledgement that plaintiffs' claims had merit.  The court quoted the following from CalPERS's motion to stay:

> "In this action, Plaintiffs contend that members and beneficiaries of the defined benefit plans that the Board administers should be paid interest when payments owed to them are wrongfully withheld due to unreasonable delay.  The Board agrees."
> (Underscoring added by the trial court.)

The trial court appeared to rely on this statement as a concession that the plaintiffs' claims were meritorious.[11]  However there is a difference between a general acknowledgement that individuals should be paid interest under certain circumstances and an acknowledgement that the plaintiffs' claims in this case were meritorious.

We note that CalPERS challenged plaintiffs' claims on the ground that they failed to exhaust their administrative remedies at every opportunity.  Because plaintiffs had not exhausted their administrative remedies, CalPERS had reason to anticipate victory on plaintiffs' individual claims.  Failure to exhaust administrative remedies is a "jurisdictional prerequisite to resort to the courts."  (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293.)  CalPERS filed a demurrer early in the

---

[11]    The trial court also quoted CalPERS's motion as stating, "If the Board adopts the proposed regulation in its current form, there is no doubt that the regulation will have a significant impact on both the conduct of this action and the remedies the Court might fashion, if any."

litigation, which was overruled only because the matter was a purported class action. CalPERS vigorously opposed class certification and when it was denied filed a successful motion for judgment on the pleadings on the grounds that the plaintiffs had failed to exhaust their administrative remedies. In short, the named plaintiffs brought cases that were fatally flawed. Despite CalPERS's acknowledgement that it should pay interest in certain circumstances, CalPERS had no reason to believe the plaintiffs in this case presented a threat of victory.

Further, section 555.5 did not address plaintiffs' claims. Plaintiffs admitted the regulation excluded many of the putative class members, as well as all of the named plaintiffs. It set a three-year statute of limitations on claims, which meant that it did not apply to these plaintiffs. It seems that if CalPERS feared that plaintiffs had meritorious claims, CalPERS would have included such claims in its proposed relief.

This analysis is not necessary to our decision to reverse the award of attorney fees under section 1021.5. However a more thorough analysis of the merits of plaintiffs' claims was warranted under the circumstances of this case.

E.     *The cost award must also be reversed*

Code of Civil Procedure section 1032 allows the prevailing party to recover its costs. The trial court determined that plaintiffs were the prevailing parties to this litigation under the catalyst theory. The court therefore awarded plaintiffs their costs of litigation under Code of Civil Procedure section 1032, subdivision (a). The trial court noted that Code of Civil Procedure section 1032, subdivision (a)(4) gives a court discretion to determine prevailing party status where "any party recovers other than monetary relief and in situations other than as

37

specified." The trial court determined that in the context of this case CalPERS's enactment of section 555.5 constituted nonmonetary relief, such that plaintiffs should be granted prevailing party status.

As set forth above, we disagree with the trial court's primary determination that plaintiffs were the prevailing parties in this litigation. Plaintiffs did not achieve their primary objectives. They were denied class certification, and achieved no financial award. Further, they opposed section 555.5 because it did not provide them with the relief they desired. Under the circumstances, section 555.5 cannot be described as nonmonetary relief to the plaintiffs.

Plaintiffs were not the prevailing party under Code of Civil Procedure section 1032 as a matter of law.

### F. *Conclusion*

The trial court's order awarding section 1021.5 attorney fees to plaintiffs and its order awarding costs to plaintiffs are reversed.

## II. Plaintiffs' cross-appeal[12]

### A. *Applicable law and standard of review*

A motion for judgment on the pleadings may be made by a defendant on the grounds that (1) the court lacks jurisdiction over

---

[12]    Because we have determined that attorney fees were not properly awarded under section 1021.5 as a matter of law, we decline to address the portion of plaintiffs' cross-appeal that challenges the trial court's decision to cut off attorney fees as of April 16, 2015, and other ways in which the trial court curtailed plaintiffs' fee request. Further, because we have determined that costs were not properly awarded to plaintiffs under Code of Civil Procedure section 1032, we also decline to address plaintiffs' argument that the trial court improperly reduced its request for

one or more causes of action; or (2) the complaint fails to state facts sufficient to constitute a cause of action against the defendant.  (Code Civ. Proc., § 438, subd. (c)(1)(B).)  "The grounds for motion . . . shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice."  (Code Civ. Proc., § 438, subd. (d).)

"'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.'"  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)  "'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .'"  (*Ibid.*)

### B. *Plaintiffs have failed to establish error*

#### 1. *The trial court's decision*

The trial court held that plaintiffs' failure to plead exhaustion of administrative remedies was grounds for judgment on the pleadings in CalPERS's favor.  The parties did not dispute that in the FAC plaintiffs alleged that seven of the eight named plaintiffs did not exhaust their administrative remedies before filing this action with the court.[13]

On September 10, 2014, the trial court overruled CalPERS's demurrer to the FAC on the ground that CalPERS's administrative process did not provide for class relief.  The trial

---

costs.  We limit our analysis of plaintiffs' cross-appeal to the issue of whether the trial court properly granted CalPERS's motion for judgment on the pleadings.

[13]    Only plaintiff Christopher Cervelli was alleged to have exhausted his administrative remedies.  Cervelli was dismissed from the matter after the trial court sustained CalPERS's demurrer to his claims.

court rejected plaintiffs' arguments that (1) CalPERS lacked authority to resolve plaintiffs' claims, (2) plaintiffs' claims are outside CalPERS's jurisdiction, and (3) it would be futile to participate in the administrative process. Specifically, the trial court held that the existence of the three-year statute of limitations found in section 555.5 "does not necessarily render Plaintiffs' administrative claims futile." Given the history of the case, the court noted, "there may be meritorious arguments for tolling the statute of limitations." Regardless of whether or not such tolling arguments would be successful, the court agreed that it lacked jurisdiction to rule on the merits of plaintiffs' claims absent prior exhaustion of their administrative remedies.

**2.** *Plaintiffs' appeal is forfeited*

Plaintiffs' appeal of this issue consists of two paragraphs, neither of which cite any legal authority supporting their position. Plaintiffs assert that the court's ruling required plaintiffs to exhaust administrative remedies "that would provide no relief largely because of the 3-year SOL, and caused them to lose the advantage of tolling from their superior court filing and the right to interest under *Civil Code* §3287." Plaintiffs fail to fully develop this argument and fail to cite supporting relevant California legal authority. Under the circumstances, their argument is forfeited. (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 488-489). "'We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."'" (*Id.* at p. 496).

40

**3.** *The trial court did not err in granting the motion for judgment on the pleadings*

Although plaintiffs have forfeited this argument, we note that the trial court's decision reveals no error. As plaintiffs implicitly acknowledge, exhaustion of administrative remedies is a prerequisite to filing in the courts. (*Fiscus v. Department of Alcoholic Beverage Control* (1957) 155 Cal.App.2d 234, 236.) And although plaintiffs have not cited any legal authority on the topic, the trial court noted that a futility doctrine does exist. "Failure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile. [Citation.] Similarly, it is improper to invoke the primary jurisdiction of an administrative agency if it is clear that further proceedings within that agency would be futile." (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936 (*Jonathan Neil*).)

The futility exception is narrowly applied, however. "The futility exception requires that the party invoking the exception 'can positively state that the [agency] has declared what its ruling will be on a particular case.'" (*Jonathan Neil, supra*, 33 Cal.4th at p. 936.) There is no evidence in this case that CalPERS has declared what its ruling will be on any of the named plaintiffs' individual claims. As the trial court pointed out, plaintiffs' potentially meritorious claims for tolling the statute should be made in the first instance through CalPERS's administrative process.

## DISPOSITION

The postjudgment order awarding plaintiffs attorney fees under section 1021.5 and the postjudgment order awarding plaintiffs costs under Code of Civil Procedure section 1032 are

41

reversed.  CalPERS's motion for judgment on the pleadings and ensuing judgment are affirmed.  Each side is to bear its own costs.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.